UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 07 CRIM.   603

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :      <u>INDICTMENT</u>

   - v -                          :      07 Cr.          (    )

NICHOLAS MIRITELLO,               :

       Defendant.              :

- - - - - - - - - - - - - - - x

U.S. DISTRICT COURT
FILED
JUL 3 – 2007
S. D. OF N.Y.

<u>COUNTS ONE THROUGH FOUR</u>

False Statements, Representations and Entries
<u>Relating to Drinking Water Monitoring</u>

The Grand Jury charges:

<u>Background</u>

1.  At all times relevant to this Indictment:

a.  The New York City Department of Environmental
Protection (hereinafter "DEP") was a department of the City of
New York.  Among other things, DEP had charge and control of, and
was responsible for, all functions and operations of New York
City relating to the provision of a pure, wholesome and adequate
supply of water.  DEP had charge and control over the New York
City water supply system ("the water supply system"), which
included numerous reservoirs, aqueducts, tunnels, pipes, and
waterways.  The water that flowed through the New York City water
supply system originated in two watersheds, the Catskill/Delaware
watershed and the Croton watershed.  Water originating in the
Catskill/Delaware watershed flowed through either the Catskill
Aqueduct or the Delaware Aqueduct en route to distribution in New
York City.  Under normal operating conditions, approximately
forty percent of New York City's water flowed through the

Catskill Aqueduct en route to distribution in New York City.

       b.  The United States Environmental Protection Agency ("EPA") was an agency of the United States Government. EPA had general authority to administer the Safe Drinking Water Act, including the authority to promulgate and enforce rules and regulations pursuant to that Act.  Among the rules promulgated by EPA pursuant to the Safe Drinking Water Act was a rule that required certain owners and operators of public water systems to monitor water for turbidity, which is a measure of cloudiness.

       c.  EPA had found that although turbidity itself had no health effects, turbidity could be harmful in other ways, including by interfering with disinfection and providing a medium for microbial growth.  In addition, EPA had found that turbidity could indicate the presence of disease-causing organisms, including bacteria, viruses, and parasites, and that increased turbidity levels could contribute to the development of certain potentially harmful disinfection byproducts.

       d.  EPA required DEP to monitor water for turbidity every day of the year at multiple locations, including a water supply facility known as the Catskill Lower Effluent Chamber (hereinafter the "CLEC").  Among other things, the CLEC housed equipment for DEP personnel to use to take and analyze "grab samples," that is, samples taken by holding a container in a stream of running water.  The CLEC also housed an automatic testing device that provided continuous turbidity readings (hereinafter "the automatic testing device").

e.  Employees of DEP were assigned to perform turbidity monitoring in the CLEC at four hour intervals throughout each day and to make a record of the results of that monitoring in a log book (hereinafter "the turbidity log book") maintained in the CLEC.  The monitoring procedure (hereinafter "the turbidity monitoring procedure") included the following three processes ("the three processes"):  1) the performance of a calibration check, to ensure that the equipment used for analyzing grab samples was properly calibrated; 2) the taking and analysis of a grab sample; and  3) the comparison of the results of the grab sample analysis with a reading provided by the automatic testing device.  Each of these processes yielded a numerical result.  Pages in the turbidity log book contained separate columns for recording the results of each of the three processes and the initials of the DEP employee who performed them.

f.  EPA personnel regularly inspected the turbidity log book as part of a periodic review of DEP's turbidity monitoring in the CLEC.

<u>The Defendant</u>

2.  At all times relevant to this Indictment, NICHOLAS MIRITELLO, the defendant, was an employee of DEP.  MIRITELLO's duties included performing the turbidity monitoring procedure in the CLEC and recording the results of that monitoring in the turbidity log book.  Prior to 2005, MIRITELLO demonstrated his familiarity with the turbidity monitoring procedure.

3

## The False and Fictitious Entries in the Turbidity Log Book

3.    On multiple occasions during February and March, 2005, NICHOLAS MIRITELLO, the defendant, entered the CLEC at or about the time that he was supposed to perform the turbidity monitoring procedure and made entries in the turbidity log book that made it appear as though he had performed and obtained results from all of the three processes included in that procedure when, in fact, he had not.

### Statutory Allegation

4.    On or about the dates set forth below, in the Southern District of New York, NICHOLAS MIRITELLO, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, specifically, a matter within the jurisdiction of the EPA, a department and agency of the United States, unlawfully, willfully and knowingly did make materially false, fictitious, and fraudulent statements and representations and make false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, MIRITELLO, while an employee of DEP, made entries in the turbidity log book that falsely purported to reflect that he had performed and obtained results from the all of the three processes included in the turbidity monitoring procedure when, in fact, he had not, as set forth below:

4

| COUNT | APPROXIMATE DATE | APPROXIMATE TIME OF FALSE ENTRY |
|-------|------------------|--------------------------------|
| ONE   | February 10, 2005 | 11:45 p.m. |
| TWO   | February 11, 2005 | 3:35 a.m.  |
| THREE | March 14, 2005    | 7:26 p.m.  |
| FOUR  | March 14, 2005    | 11:43 p.m. |

(Title 18, United States Code, Section 1001.)


FOREPERSON

MICHAEL J. GARCIA
UNITED STATES ATTORNEY

5